UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In re: VAUGHAN COMPANY, REALTORS,     Case No. 10-10759

    Debtor.

---

JUDITH A. WAGNER, Chapter 11 Trustee
Of the bankruptcy estate of the Vaughan Company,
Realtors,

    Plaintiff,

v.     Adv. No. 12-1139

DAVID LANKFORD and
LEE ANN LANKFORD,

    Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on the Motion for Leave to File a Counterclaim Against the Trustee (the "Motion") filed by David Lankford and Lee Ann Lankford, *pro se*. *See* Docket No. 75. The Lankfords seek leave to file a counterclaim against Judith Wagner, Chapter 11 Trustee of the bankruptcy estate of the Vaughan Company Realtors, (the "Trustee") and her counsel for extortion, incompetence, and fraud. After considering the Motion, the Trustee's response, and the supporting papers, and being otherwise sufficiently informed, the Court finds that the motion should be denied.

### BACKGROUND[1]

Vaughan Company Realtors ("VCR") filed a voluntary petition under Chapter 11 of the Bankruptcy Code on February 22, 2010. The Trustee was appointed on April 29, 2010. The

---

[1] The Background section includes facts that are readily apparent from the docket and allegations contained in the Motion. The Lankfords' allegations are treated as true for purposes of the instant Motion only. The Court is making no determination as to the timing and amount of the transfers at issue or whether the Trustee engaged in any of the alleged misconduct.

Lankfords allege that on February 10, 2012, the Trustee sent a demand letter threatening to sue them if they failed to pay $67,313.88 within four days. The Lankfords did not pay any money to the Trustee, and on February 21, 2012, she commenced the above-captioned adversary proceeding. In her complaint, the Trustee seeks to recover as a fraudulent transfer allegedly fictitious returns and profits that were paid to the Lankfords pursuant to a Ponzi scheme.

The Trustee originally asserted that the Lankfords received at least $144,976.56 in transfers from VCR. The Lankfords allege that certain FBI files which were confiscated from VCR in connection with Douglas Vaughan's criminal proceeding contained information that called into question the accuracy of that figure. In August 2013, the Court directed the Trustee to explain her calculations to the Lankfords. After reviewing additional information and financial documents, the Trustee determined that the complaint overstated the amounts paid to the Lankfords by $4,037.24. The Trustee reduced the amount sought in a subsequent motion for summary judgment. *See* Docket No. 56. The Court has not ruled on that motion.

The Lankfords allege that the Trustee and her counsel committed various other errors. They allege that either she or her counsel: (1) commenced the lawsuit against the Lankfords without knowing anything about them personally; (2) treated the Lankfords like criminals; (3) sent a disc containing the Lankfords' personal financial information to an attorney who did not represent them;[2] (4) made numerous arithmetic errors in calculating the amounts invested and received; (5) failed to support her motion for summary judgment with a particular discovery response; (6) attached a ledger relating to another defendant to a motion seeking summary judgment against the Lankfords; and (7) failed to reduce the amount sought after settling with the custodian of the Lankford's individual retirement account ("IRA").

---

[2] The Lankfords made this allegation in support of their claim for incompetence.

2

DISCUSSION

The Lankfords wish to file a counterclaim against the Trustee and her counsel for extortion, incompetence, and fraud. Parties seeking to sue a bankruptcy trustee for actions taken in the course of his or her official duties must obtain permission from the bankruptcy court. *See Barton v. Barbour*, 104 U.S. 126, 136, 26 L.Ed. 672 (1881); *Satterfield v. Malloy,* 700 F.3d 1231, 1236 (10th Cir. 2012) (The *Barton* doctrine "precludes suit against a bankruptcy trustee for claims based on alleged misconduct in the discharge of a trustee's official duties absent approval from the appointing bankruptcy court."). "*Barton* applies to claims arising from acts done in the trustee's official capacity and within the trustee's authority as an officer of the court." *Id.* at 1234. Bankruptcy trustees are afforded this protection because:

> like an equity receiver, a trustee … is working in effect for the court that appointed or approved him, administering property that has come under the court's control by virtue of the Bankruptcy Code. If he [or she] is burdened with having to defend against suits by litigants disappointed by his [or her] actions on the court's behalf, his [or her] work for the court will be impeded.

*Id.* at 1235 (quoting *In re Linton*, 136 F.3d 544, 545 (7th Cir.1998)). The protections of the *Barton* doctrine extend to the trustee's counsel "where [counsel] act[s] at the direction of the trustee and for the purpose of administering the estate or protecting its assets." *In re DeLorean Motor Co.*, 991 F.2d 1236, 1241 (6th Cir.1993); *Lawrence v. Goldberg,* 573 F.3d 1265, 1269-1270 (11th Cir. 2009) (noting that the *Barton* doctrine applies to professionals retained by the trustee).[3]

"A party seeking leave of court to sue a trustee must make a prima facie case … , showing that its claim is not without foundation." *In re VistaCare Group, LLC,* 678 F.3d 218,

---

[3] *See also Gordon v. Nick,* 1998 WL 559734, *2 (4th Cir. 1998) ("The *Barton* doctrine protects not only the trustee, but also other court-appointed officers who represent the bankruptcy estate, including the attorney of the trustee."); *In re Balboa Improvements, Ltd.*, 99 B.R. 966, 970 (9th Cir. BAP 1989) (Barton doctrine applies to suits against the trustee's attorneys); *Hutchins v. Shatz, Schwartz and Fentin, P.C.,* 494 B.R. 108, 115-16 (D.Mass.2013) (same).

3

232 (3rd Cir. 2012); *In re Weitzman,* 381 B.R. 874, 880 (Bankr.N.D.Ill. 2008) (noting that under the *Barton* doctrine, "the court should not give its permission unless it is convinced that the movant has a *prima facie* case against the trustee" or counsel).[4] The Lankfords must therefore make a prima facie showing that the Trustee and her counsel are liable for fraud, extortion, and incompetence.

A prima facie showing of fraud requires: "(1) a misrepresentation of fact, (2) either knowledge of the falsity of the representation or recklessness on the part of the party making the misrepresentation, (3) intent to deceive and to induce reliance on the misrepresentation, and (4) detrimental reliance on the misrepresentation" *Spencer v. Barber,* 299 P.3d 388, 402 (N.M. 2013). "[E]xtortion consists of the communication ... of any threat to another ... with intent thereby to wrongfully obtain anything of value or to wrongfully compel the person threatened." *Sunwest Bank of Albuquerque, N.A. v. Daskalos,* 120 N.M. 637, 638, 904 P.2d 1062, 1063 (Ct.App. 1995) (quoting N.M.S.A. 1978 § 30-16-9). There is no cause of action for incompetence.

Here, the allegedly offending conduct occurred while the Trustee pursued her fraudulent transfer action against the Lankfords in an effort to recover funds for the benefit of the bankruptcy estate. The Trustee was therefore acting in her official capacity and within her authority as an officer of the court. Further, the actions taken by her counsel (*i.e.* sending

---

[4] *See also In re Spritos,* 2006 WL 373014, *6 (9th Cir. 2006) (finding that the bankruptcy court appropriately denied leave to sue a trustee where the movant failed to allege a prima facie case against the trustee); *In re Summit Metals, Inc.,* 477 B.R. 484, 497 (Bankr.D.Del. 2012) ("A party seeking leave of the appointing court to sue a trustee must establish a *prima facie* case against the trustee on the merits."); *In re McKenzie,* 476 B.R. 515, 530 (E.D.Tenn. 2012) ("Before leave can be granted, the plaintiff must establish a prima facie case [against the trustee] regarding his claim."); *In re Feeley,* 393 B.R. 43, 50 (Bankr.D.Mass. 2008) (same).

4

demand letters, composing pleadings, and filing attachments to various motions) were also taken at the direction of the Trustee and furtherance of the fraudulent transfer litigation. *See, e.g., McDaniel v. Blust*, 668 F.3d 153, 157 (4th Cir.2012) (*Barton* applied to claims against trustee's counsel based on actions taken in the context of attempting to prove avoidance actions).

The Trustee suggests that her liability, and perhaps that of her counsel, is limited and that the Lankfords must show misfeasance of a more heightened variety such as willful or deliberate acts. She may very well be correct. However, the Court need not reach that issue because the allegations here are insufficient to make a prima facie showing under any standard that the Trustee and her counsel are liable to the Lankfords for fraud or extortion. For example, the Lankfords have not alleged that they relied on any of the alleged misrepresentations made by the Trustee or her counsel with respect to their investments in VCR. To the contrary, they have maintained throughout the case that her calculations were incorrect. The Lankfords have also failed to allege facts demonstrating that the Trustee or her counsel extorted them. Sending a demand letter before commencing litigation is fairly common; it is not wrongful, nor does it constitute a criminal threat. Further, there are no wrongful, threatening communications in the complaint.

The remaining errors reported by the Lankfords are also insufficient to make a prima facie showing that the Trustee or her counsel breached any duties or engaged in misconduct. Aside from several bald allegations that the Trustee "willfully and deliberately manufacture[d] evidence, lie[d] to the court, … extort[ed] money," and "violated her fiduciary duties," most of the Lankford's factual allegations appear to focus on the fact that they dispute the amount the Trustee seeks to recover. For example, they contend that she failed to reduce the amount sought from them after settling with their IRA custodian and that her counsel failed to support her

5

dispositive motions with certain evidence. Such disputes should be resolved in the context of the pending motions for summary judgment as to the timing and amount of the transfers and if necessary at trial, not by filing suit against the Trustee and her counsel.

The Court is sympathetic to the Lankfords' situation. To unwittingly loan money to the perpetrator of a Ponzi scheme, be sued, and spend significant time dealing with accounting discrepancies in the fraudulent transfer lawsuit is frustrating and stressful. Nevertheless, the Lankfords have not made a prima facie showing under any standard the Trustee or her counsel engaged in fraud, extortion, or otherwise breached a duty to the Lankfords. The Motion will therefore be denied.

WHEREFORE, IT IS HEREBY ORDERED that the Lankford's Motion is DENIED. The Lankfords are not permitted to file a counterclaim for fraud, extortion, or incompetence against the Trustee or her counsel.

_____
ROBERT H. JACOBVITZ
United States Bankruptcy Judge

Date entered on docket: February 14, 2014

COPY TO:

James Askew, Edward Mazel, & Daniel White
320 Gold Ave S.W.
Suite 300A
Albuquerque, NM 87102

David Lankford & Lee Ann Lankford
4243 E. Montgomery Rd
Cave Creek, AZ 85331