UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In re: VAUGHAN COMPANY, REALTORS,　　　　　　　　　　Case No. 10-10759

　　　　Debtor.

---

JUDITH A. WAGNER, Chapter 11 Trustee
Of the bankruptcy estate of the Vaughan Company,
Realtors,

　　　　Plaintiff,

v.　　　　　　　　　　　　　　　　　　　　　　　　　　　Adv. No. 12-1139

DAVID LANKFORD and
LEE ANN LANKFORD,

　　　　Defendants.

## MEMORANDUM OPINION

THIS MATTER is before the Court on the Motions for Summary Judgment (the "Motions" or "Motions for Summary Judgment") filed by the Chapter 11 Trustee. *See* Docket Nos. 52 and 56. The Trustee seeks to recover as fraudulent transfers all fictitious profits paid by the Debtor to Defendants David and Lee Ann Lankford pursuant to a Ponzi scheme. The Lankfords contend, among other things, that the litigation is fundamentally unfair and that any recoverable amounts should be reduced by the taxes and fees they paid before using the funds. After considering the Motions, the Lankfords' responses and supplemental responses, and the supporting papers, and being otherwise sufficiently informed, the Court finds the Motions should be granted, as described below.

1

SUMMARY JUDGMENT STANDARDS

Summary judgment will be granted when the movant demonstrates that there is no genuine dispute as to a material fact and that the movant is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(a), made applicable to adversary proceedings by Fed.R.Bankr.P. 7056. "[A] party seeking summary judgment always bears the initial responsibility of informing the ... court of the basis for its motion, and ... [must] demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In considering a motion for summary judgment, the Court must "examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment." *Wolf v. Prudential Ins. Co. of America*, 50 F.3d 793, 796 (10th Cir. 1995) (quoting *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F2d 1238, 1241 (10th Cir. 1990)). "[A] party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial" through affidavits or other supporting evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed .2d 202 (1986).

PROCEDURAL BACKGROUND

The Trustee commenced the above-captioned adversary proceeding in February, 2012. She sought to avoid certain transfers from the Vaughan Company Realtors ("VCR") to the Lankfords, jointly, and to David Lankford, individually, pursuant to 11 U.S.C. §§ 544 and 548 and New Mexico's version of the Uniform Fraudulent Transfer Act ("UFTA"), N.M.S.A. 1978 §§ 56-10-18 and (19). Based on her review of spreadsheets maintained by VCR reflecting Form 1099 interest disclosures, the Trustee originally asserted that the Lankfords jointly received at least $144,976.56 in transfers from VCR over the life of their investments and that David

2

Lankford, individually, received $199,160.47 during such time. The Lankfords disputed the accuracy of those figures. In August 2013, the Court directed the Trustee to explain her calculations to the Lankfords. After obtaining additional financial documents, the Trustee determined that the complaint overstated the amounts paid to the Lankfords, jointly, by $4,037.24 and to David Lankford, individually by approximately 40-60 cents. The Trustee adjusted the amounts sought accordingly.

As a result of the Trustee's accounting errors, the relationship between the litigants deteriorated. The Lankfords requested leave to file a counterclaim against the Trustee and her counsel for extortion, incompetence, and fraud. The Court denied the request because the Lankfords did not make a prima facie showing that the Trustee or her counsel engaged in such conduct. *See* Memorandum Opinion and Order Denying Motion to File Counterclaim (Docket No. 81).

In September and October of 2013, the Trustee filed the Motions for Summary Judgment. Although the Lankfords, who are unrepresented, made a good faith effort to respond to the Motions, their original responses contained several procedural defects. In the interest of reaching the merits of the parties' arguments, the Lankfords were permitted to supplement their responses pursuant to Fed.R.Civ.P. 56(e)(1). *See* Order Striking Sur-Reply, Allowing Defendants to Supplement Response, and Vacating Trial Setting (Docket No. 86) (the "Order Allowing Supplementation"). The Court gave the Lankfords instructions regarding how to dispute the Trustee's proffered facts as well as how to set forth additional facts in support of their responses. The Court also warned both parties that it would only consider facts set forth in a separate statement of material facts and supported by admissible evidence. The Lankfords then

3

filed supplemental responses, to which the Trustee was given an additional opportunity to respond.

By her Motions for Summary Judgment, the Trustee appears to have originally sought to recover the entire amounts paid to the Lankfords, jointly, and David Lankford, individually, within four years before the bankruptcy case was commenced. The Court understands that in her supplemental replies, the Trustee limited the requested relief to recovery of the fictitious profits paid to the Lankfords in excess of their initial investments in the Ponzi scheme (*i.e.* "Net Winnings").[1] *See* Docket Nos. 93-94 (together the "Supplemental Replies"). For purposes of this ruling, the Court therefore limited its focus to whether, and to what extent, the Lankfords, jointly, and David Lankford, individually, received avoidable Net Winnings.

## UNDISPUTED FACTS RELATING TO ALL PARTIES

A. VCR filed a voluntary petition under Chapter 11 of the Bankruptcy Code on February 22, 2010 (the "Petition Date"). *See* Docket No. 1 in Case No. 10-10759.

B. The Trustee commenced the above-captioned adversary proceeding on February 21, 2012. *See* Trustee's Complaint, Docket No. 1 in Adv. No. 12-1139.

---

[1] Only the Supplemental Reply relating to David Lankford expressly states that if the Trustee obtains a judgment in the amount of the Net Winnings, she will not attempt to recover greater amounts. However, that intention is implicit in the Supplemental Reply relating to the Lankfords' joint investment (Docket No. 91). In that document, the Trustee states that she only seeks to recover Net Winnings on summary judgment, not all of the amounts transferred during the four year look-back period. She also states that the Lankfords' contentions regarding the amount of transfers made to them during the four year look-back period are moot. Based on these representations, the Court infers that the Trustee only seeks to recover Net Winnings from the Lankfords in connection with their joint investments.

4

UNDISPUTED FACTS RELATING TO THE LANKFORDS' JOINT INVESTMENTS[2]

1. David and Lee Ann Lankford jointly invested a total of $95,000 in VCR's promissory note program (*i.e.* the Ponzi scheme). *See* Trustee's Motion for Partial Summary Judgment as to the Timing and Amount of the Transfers Against David Lankford and Lee Ann Lankford on Account of Joint Investment (the "Motion Relating to the Joint Investment") (Docket No. 56), ¶ 2; Supplemental Response to the Motion Relating to the Joint Investment (the "Joint Supplemental Response") (Docket No. 91), p. 5 of 21.

2. From 2004 through the Petition Date, the Lankfords received $140,939.32 from VCR on account of their joint investments in the Ponzi scheme. *See* Motion Relating to the Joint Investment, ¶ 3; Joint Supplemental Response, p. 5 of 21.

3. VCR paid $45,939.32 more to the Lankfords than they originally invested.[3] *See* Motion Relating to the Joint Investment, ¶ 5; Undisputed facts No. 1 and 2.

4. VCR transferred the Net Winnings ($45,939.32) to the Lankfords within four years before the Petition Date.[4] *See* Motion Relating to the Joint Investment, ¶ 4; Affidavit of Judith Wagner, Chapter 11 Trustee, attached as Exhibit C to the Motion Relating to the Joint

---

[2] In finding the undisputed facts, the Court considered the Trustee's Motion for Summary Judgment as to the Timing and Amount of the Transfers to David Lankford and Lee Ann Lankford (Docket No. 56), the Lankfords' original objection to that motion (Docket No. 67), the Trustee's original reply (Docket No. 70), the Lankfords' supplemental response (Docket No. 91), the Trustee's supplemental reply (Docket No. 94), and all supporting papers accompanying those documents, to the extent such papers could be presented in an admissible form at trial.

[3] In their Joint Supplemental Response, the Lankfords contend that they did not benefit from much of the Net Winnings. However, they did not specifically dispute the amount stated by the Trustee or offer admissible evidence that they received a different amount before payment of taxes and IRA fees are taken into account.

[4] The parties dispute the exact amount transferred within four years before the Petition Date. The exhibits attached to the Motion Relating to the Joint Investment, which include copies of the checks issued by VCR to the Lankfords, establish that the Lankfords received over $100,000 during the four year look-back period. The Lankfords did not offer admissible evidence to dispute this fact. Thus, calculated in accordance with the "netting ruling," as addressed below, the Court is able to conclude that principal was repaid before any fictitious profits and that at least $45,939.32 in fictitious profits was transferred within four years before February 22, 2010.

Investment (Docket No. 56-3), ¶ 10; Checks reflecting payments from VCR to the Lankfords, attached to the Trustee's affidavit (Docket No. 56-4).

UNDISPUTED FACTS RELATING TO DAVID LANKFORD'S INVESTMENTS[5]

5. David Lankford individually invested a total of $177,695 in VCR's promissory note program. *See* Trustee's Motion for Partial Summary Judgment as to the Timing and Amount of the Transfers Against David Lankford (the "Motion Relating to David Lankford") (Docket No. 52), ¶ 2; Supplemental Response to the Motion Relating to David Lankford ("David Lankford's Supplemental Response") (Docket No. 92), p. 2 of 46.

6. From 2003 through the Petition Date, David Lankford received $199,160.07 from VCR on account of his individual investments in the Ponzi scheme. *See* Motion Relating to David Lankford, ¶ 3; David Lankford's Supplemental Response, p. 2 of 46.

7. VCR paid $21,465.07 more to David Lankford than he originally invested.[6] *See* Motion Relating to David Lankford, ¶ 6; Undisputed facts No. 1 and 2.

8. VCR transferred the Net Winnings ($21,465.07) to David Lankford within four years before the Petition Date.[7] *See* Motion Relating to David Lankford, ¶ 5; David Lankford's Supplemental Response, p. 3 of 46; Zia Trust Account Ledger titled "History for 1/1/1997 to 12/31/2011 for … David L. Lankford R/O IRA" and Summary of the Zia Ledger prepared by

---

[5] In finding the undisputed facts, the Court considered the Trustee's Motion for Summary Judgment as to the Timing and Amount of the Transfers to David Lankford Individually (Docket No. 52), David Lankford's original objection to that motion (Docket No. 60), the Trustee's original reply (Docket No. 68), the Lankfords' supplemental response (Docket No. 92), the Trustee's supplemental reply (Docket No. 93), and all supporting papers accompanying those documents, to the extent such papers could be presented in an admissible form at trial.

[6] In his Supplemental Response, David Lankford contends that he did not benefit from much of the Net Winnings. However, he did not dispute the amount stated by the Trustee or offer admissible evidence that they received a different amount before payment of taxes and IRA fees are taken into account.

[7] Mr. Lankford disputes the exact amount transferred within the four year look-back period. He admits, however, that he received $106,409.78 within two years before the Petition Date. Thus, calculated in accordance with the "netting ruling," as addressed below, the Court is able to conclude that principal was repaid before any fictitious profits and that at least $21,465.07 in fictitious profits was transferred within four years before February 22, 2010.

6

counsel for the Trustee, filed of record in connection with the Motion Relating to David Lankford as Corrected Exhibit B (Docket No. 65).

## DISCUSSION

The Trustee seeks summary judgment on her constructive fraud claims in the amount of the Net Winnings paid to the Lankfords, jointly, and David Lankford, individually, during the four year look-back period. Claims for constructive fraud generally require a showing that the debtor: (1) transferred property within two or four years before the bankruptcy filing; (2) received less than reasonably equivalent value for the transfer; and (3) was insolvent (or some equivalent) at the time of the transfer. *See generally* 11 U.S.C. § 548(a)(1)(B); N.M.S.A. 1978 § 56-10-18(A)(1)(2).

By a memorandum opinion entered October 23, 2013, the Court found that, to the extent a transfer was made to the Lankfords within four years before the Petition Date: (1) each transfer constituted an interest of VCR in property; (2) VCR received less than reasonably equivalent value in exchange for the transfer of any returns in excess of the Lankfords' original investment (*i.e.* Net Winnings); and (3) on the date of each transfer, VCR was insolvent and/or believed (or reasonably should have believed) it would incur debts beyond its ability to repay.[8] *See Wagner v. Oliva, et al,* 500 B.R. 778 (Bankr.D.N.M. 2013) or Docket No. 74 in Misc. Adv. No. 12-0006. The Court also determined that VCR operated as a Ponzi scheme from at least 2005 through the Petition Date. *Id.* The only remaining issue with respect to the Trustee's constructive fraud claims is whether, and to what extent, the transfers actually occurred.

---

[8] Because this adversary proceeding is one of over fifty such cases filed by the Trustee to recover returns and profits paid pursuant to VCR's Ponzi scheme, the Court consolidated various common issues of law and fact. The memorandum opinion entered October 23, 2013 reflects the Court's consolidated rulings as set forth above.

All parties agree on the total amounts the Lankfords, jointly, and David Lankford, individually, invested in the Ponzi scheme. They also agree on the amounts each Defendant received from VCR over the life of the investments. The main point in contention, at least for purposes of this ruling, is how much "cash in hand" the Defendants actually received in excess of their initial investment.

Normally, the Court would calculate such amount by applying the "netting rule." Under that rule, "[a]mounts transferred by the Ponzi scheme perpetrator to the investor are netted against the [total] … amounts invested by that individual." *Donell v. Kowell,* 533 F.3d 762, 771 (9th Cir. 2008). As one court explained:

> If a given defendant received less than his undertaking, the amounts received should be considered return of principal, regardless of how the parties' may have designated them. On the other hand, to the extent all transfers to a defendant exceeded his undertaking, the amounts should be considered so-called earnings [net-winnings], regardless of the parties' designation.

*In re Independent Clearing House Co.,* 77 B.R. 842, 851 n. 14 (D.Utah 1987). *See also Securities Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec, LLC (In re Madoff Sec.),* 476 B.R. 715, 729 (S.D.N.Y.2012) (adopting the "netting rule"); *cf In re Hedged–Inv. Assocs., Inc.),* 84 F.3d 1286, 1289 (10th Cir.1996) (suggesting that the liability of an investor depends on whether they received payments from the Ponzi-perpetrator in excess of their original investment).

Here, the Lankfords argue that simply netting the total amount paid against the total amount invested does accurately capture the amount of Net Winnings they received. First, they appear to contend that they should be entitled to offset from the judgment any taxes and IRA fees they paid on the transfers from VCR. The Tenth Circuit, following established precedent in other circuits, has held that investors "are not entitled to offset taxes paid on their gains from [a] … Ponzi scheme." *Wing v. Dockstader*, 2012 WL 2020666, *4 (10th Cir.2012). *See also Donell*

*v. Kowell,* 533 F.3d 762, 779 (9th Cir. 2008) (declining to "permit good faith investors to claim offsets for taxes or other expenses paid in connection with receipt and management of income from a Ponzi scheme"). As the Tenth Circuit explained:

> Allowing offsets would frustrate the purposes of the [Uniform Fraudulent Transfer Act] because there is no principle by which they could be limited, it would introduce difficult problems of proof and tracing into each case, and any amount offset would necessarily come at the expense of other investors.

*Dockstader,* 2012 WL 2020666, *4. The Lankfords are therefore not entitled to offset taxes or IRA fees paid on their gains from VCR, at least in the context of the fraudulent transfer litigation.

Next, the Lankfords contend they invested in good faith pursuant to 11 U.S.C. § 548(c) and N.M.S.A. 1978 56-10-22(A).[9] They point out, for example, that they researched VCR's promissory note program before investing and had no reason to doubt the integrity of Douglas Vaughan, VCR's principal. The Court is sympathetic to the fact that the Lankfords, like so many other defendants, had no actual knowledge of the Ponzi scheme until Douglas Vaughan's crimes came to light. However, the "good faith defense ... [only] permits an innocent investor to retain funds up to the amount of the initial outlay." *Wagner v. Eberhard,* 2014 WL 271632, *5 (Bankr.D.N.M. 2014) (quoting *Donell v. Kowell*, 533 F.3d 762, 771 (9th Cir.2008)).[10] The defense does not prevent a trustee from recovering fictitious profits paid pursuant to a Ponzi

---

[9] Section 548(c) provides, in relevant part: "a transferee ... that takes for value and in good faith has a lien on or may retain any interest transferred ... to the extent that such transferee or obligee gave value to the debtor in exchange for such transfer or obligation." 11 U.S.C. § 548(c). The UFTA provides: "[a] transfer or obligation is not voidable ... against a person who took in good faith and for a reasonably equivalent value." N.M.S.A. 56-10-22(A).

[10] *See also Perkins v. Haines,* 661 F.3d 623, 627 (11th Cir. 2011) (holding that the good faith defense under Section 548(c) can only protect Ponzi investors to the extent of their original investment); *Securities Investor Protection Corp. v. Bernard L. Madoff Inv. Securities LLC,* 499 B.R. 416, 422-426 (S.D.N.Y. 2013) (concluding that for purposes of Section 548(c), investors only give "value" to the extent of their original investment); *In re Maui Indus. Loan & Finance Co., Inc.,* 2013 WL 2897792, *6 (D.Hawaii 2013) (noting that the "good faith defense … permits an innocent winning investor to retain funds up to the amount of the initial outlay"); *In re LLS America, LLC,* 2013 WL 3305393, *14 (Bankr.E.D.Wash. 2013) (same).

9

Case 12-01139-j    Doc 99    Filed 05/27/14    Entered 05/27/14 15:38:19 Page 9 of 12

scheme. *Id*. By her Motions, the Trustee only seeks to recover Net Winnings. The Court therefore cannot consider whether the Lankfords acted in good faith, how much they actually knew, or the circumstances surrounding their investments for purposes of this ruling.

The Lankfords also attempt to defeat summary judgment by complaining about various arithmetic errors made by the Trustee. In their statement of material facts[11] and in the discussion section of their briefs, the Lankfords argue that the Trustee miscalculated the amounts they received during both the two and four year look-back periods. They also contend that the Trustee overstated the amount VCR paid to the Lankfords, jointly, by $4,037.24 after relying on inaccurate spreadsheets reflecting 1099 interest disclosures. Assuming such facts are true, they do not change the result of this ruling. The Trustee is not seeking a judgment for the entire amount VCR transferred to the Lankfords during either the two or four years preceding the Petition Date. The parties' disagreement over those amounts is therefore irrelevant. With respect to the Lankfords' assertions that the Trustee initially overstated the amounts paid to them by $4,037.24, the Trustee admits as much and has adjusted her calculations accordingly. The Motions for Summary Judgment reflect the updated calculations, and the Court did not rely on the overstated amount in connection with this ruling. Instead, it relied on numbers to which all parties agree (*i.e.* the amounts invested by the Defendants and the amounts transferred by VCR) to independently calculate the Net Winnings. Thus, to the extent the Trustee's calculations were initially incorrect, such error has not tainted this ruling.

Finally, the Lankfords point to various ways in which the Trustee has allegedly abused her position. They contend, for example, that the Trustee withheld evidence relating to the 1099 spreadsheets. The 1099 spreadsheets, which formed the basis for the Trustee's initial

---

[11] The Court considered the arguments set forth in the Lankfords' separate statement of material facts, but it did not deem such facts established. For the most part, the facts were not supported by admissible evidence. Even if the Court considered them, however, they would not have changed the result here.

10

calculations, are not pertinent to the Court's ruling here.  As explained above, the Court relied on the Lankfords' own admissions to calculate the Net Winnings.  In addition, there has been no indication that the Trustee or her counsel acted with any nefarious or dishonest motives during the course of this case.  The Lankfords also appear to contend that the Trustee violated the applicable statute of limitations and that she intentionally submitted shoddy evidence to the Court just before the limitations period expired.  This argument is not well taken.  The UFTA, in conjunction with 11 U.S.C. § 544(b), allows a trustee to void fraudulent transfers that occurred within four years before commencement of the bankruptcy case.  *See* N.M.S.A.1978 § 56-10-23.  A trustee must generally commence the fraudulent transfer litigation within the later of two years after the Petition Date or one year after he or she is appointed.  *See* 11 U.S.C. § 546(a).  Here, the Trustee is only seeking to recover Net Winnings that were paid during the four year look-back period.  Further, she commenced the case within two years of the Petition Date using the available evidence at the time.  The Trustee's claims are therefore not time-barred.

The Lankfords, like most innocent investors who unwittingly participated in VCR's Ponzi scheme, are clearly frustrated and upset by the fraudulent transfer litigation.  While the Court certainly appreciates their frustration, the Lankfords cannot keep their gains at the expense of other investors who lost everything.

The Trustee has established all elements of her claims to recover the Net Winnings VCR paid to the Lankfords, jointly, and David Lankford, individually, under 11 U.S.C. § 548(a)(1)(B) and N.M.S.A. 1978 § 56-10-18(A)(2).  As discussed above, the asserted defenses will not prevent the Trustee from recovering the Net Winnings.  The Trustee is therefore entitled to judgment in her favor against the Lankfords, jointly, in the amount of $45,939.32, and David

Lankford, individually, in the amount of $21,465.07, plus post-judgment interest at the federal judgment rate.

## CONCLUSION

Based on the foregoing, the Trustee's Motions for Summary Judgment will be granted. The Trustee is entitled to avoid and recover all Net Winnings transferred to the Defendants. The Court will enter a separate judgment consistent with this memorandum opinion.

_____
ROBERT H. JACOBVITZ
United States Bankruptcy Judge

Date entered on docket: May 27, 2014

COPY TO:
James Askew, Edward Mazel, & Daniel White
320 Gold Ave S.W., Suite 300A
Albuquerque, NM 87102

David Lankford and Lee Ann Lankford
4243 E. Montgomery Rd
Cave Creek, AZ 85331